02-10-559-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00559-CR 

 

 


 
 
 Roderick Sherrod Johnson
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

----------

 

FROM THE 371st
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

    
In a single point, Appellant Roderick Sherrod Johnson appeals the denial of his
postconviction request for forensic DNA testing.  We will affirm.

II.  Factual and Procedural Background

On July
26, 2002, a jury convicted Williams of aggravated robbery with a deadly weapon,
a knife, and found the deadly weapon allegation to be true.  The trial court
assessed his punishment at life imprisonment.  On April 3, 2003, this court
affirmed his conviction.  See Johnson v. State, No. 02-02-00301-CR, 2003
WL 1784518, at *2 (Tex. App.—Fort Worth Apr. 3, 2003, pet. ref’d) (mem. op.,
not designated for publication).  In our opinion, we set forth the following
facts:

On April 28, 2000,
Muhammad Moosa was working at a convenience store in Arlington. Approximately
fifteen minutes before the 10:00 p.m. closing time, a person entered the store,
grabbed him, and put a knife to his neck. No other customers were in the store
at that time. After forcing Moosa to open the cash register, the assailant took
the money out of it, stabbed Moosa, cutting his throat, head, and stomach, and
left the store. When police arrived, Moosa was covered in blood and was in
shock, but he was still alive.

 

After a detective
found [Johnson]’s fingerprints on the counter, he created a photographic lineup
that included [Johnson]’s photo. On May 1, 2000, Moosa identified [Johnson] from
the lineup in a solid, certain manner. Moosa also identified [Johnson] at trial
as the assailant.

 

Other evidence was
presented at trial. Moosa testified that [Johnson] had been in the store on
other occasions, and he recognized [Johnson] as a past customer. Crime scene
technicians determined that the location and position of [Johnson]’s fingerprints
indicated that he had most likely made the prints while standing behind the
counter in the clerk’s area. Moosa testified that, except for during the
robbery, he had never allowed [Johnson] behind the counter in the clerk’s area.

 

[Johnson] lived
almost directly behind the store. [Johnson]’s aunt, Audrey Malone, testified
that he had been wearing two plain, white t-shirts that night when she sent him
to the store just before 10:00 p.m. to get change for a twenty-dollar bill.
Malone said that when [Johnson] returned six or seven minutes later, he said
the store was already closed, he was still wearing the t-shirts, and he did not
appear to have been involved in any type of struggle.

 

Several days after
the incident, one of [Johnson]’s neighbors discovered a broken knife and a
bloody, plain white t-shirt in a dumpster located a short distance from the
store. Police determined that the blood on the knife and t-shirt was Moosa’s.
Although recovering DNA from sweat or skin cells inside the shirt is a possible
method for determining who had worn the shirt, no other DNA was found on it.
The record does not reflect if any DNA besides Moosa’s was found on the knife.
A fence was located near the dumpster, and the fence had a hole in it that ran
between [Johnson]’s home and the store. Residents of the neighborhood used the
hole as a shortcut to the store.

 

Several defense
witnesses testified that [Johnson] traveled to Mississippi on April 29, 2000 to
attend his grandmother’s funeral. [Johnson] returned on May 2, 2000. [Johnson]’s
girlfriend, who was with him when he was arrested on May 2, testified that he
was shocked at being arrested.

 

Id. at
*1.

On August
21, 2009, Johnson filed a motion for appointment of counsel for DNA testing.  On
September 17, 2010, after an attorney was appointed to represent him, Johnson
filed his request for DNA testing of the t-shirt, the knife, and some loose
hair found on the t-shirt.  The State filed a response and proposed findings of
fact and conclusions of law.  On November 29, 2010, without a hearing, the
trial court adopted the State’s proposed findings and conclusions and denied Johnson’s
request for DNA testing.   

Regarding
DNA testing of the t-shirt­—which is the only complaint Johnson raises on
appeal—the trial court found that the t-shirt was subjected to Short Tandem
Repeat (“STR”) DNA testing, that no STR DNA profiles were found on the armpits
or back of the neck of the t-shirt, and that the DNA profile obtained from the
blood stain on the t-shirt matched Moosa’s DNA profile.  The trial court
concluded that “[t]here is no reasonable likelihood that any current DNA
testing technique would provide a more accurate or probative result” and that
Johnson has failed to meet the requirements of article 64.01 for new forensic
DNA testing.   

III.  DNA Testing Under Chapter 64

A
convicted person who moves for postconviction DNA testing bears the burden of
satisfying the requirements of chapter 64 of the code of criminal procedure.  See
Wilson v. State, 185 S.W.3d 481, 484 (Tex. Crim. App. 2006).  Article
64.01(a) provides for forensic DNA testing of “evidence containing biological
material.”  See Tex. Code Crim. Proc. Ann. art. 64.01(a) (West Supp. 2010). 
A convicted person may seek postconviction DNA testing of evidence that was “not
previously subject to DNA testing,” id. art. 64.01(b)(1), or evidence
that was previously subjected to testing but can be tested with newer testing
techniques,  id. art. 64.01(b)(2).  

Different
burdens exist, depending on whether evidentiary materials have been previously tested
for DNA.  Swearingen v. State, 303 S.W.3d 728, 731 (Tex. Crim. App.
2010).  However, for a convicted person to be entitled to postconviction DNA
testing under either scenario, he must first establish that the evidence he
seeks to be tested contains biological material.  Id. at 732 (“A literal
reading of the statute unequivocally mandates that all evidence to be tested
must first be proven to contain biological material.”).  A mere assertion or a
general claim that the existence of biological material is probable will fail
to satisfy the convicted person’s burden.  Id. (citing Routier v.
State, 273 S.W.3d 241, 256 (Tex. Crim. App. 2008)).  

The
Texas Court of Criminal Appeals has interpreted the phrase “evidence containing
biological material” to mean the individual samples of biological material,
even if taken from the same physical object or source.  Routier, 273
S.W.3d at 247–48 (providing example that if a convicted person seeks to test
multiple blood stains on a shirt, the term “evidence containing biological
material” is deemed to be the individual blood stains on the shirt, not the
shirt itself).  

When,
as here, the trial court denies a motion for postconviction DNA testing without
conducting a hearing, we review the ruling de novo.  See Smith v. State,
165 S.W.3d 361, 363 (Tex. Crim. App. 2005).  

IV.  No Error in Denial of Motion for DNA Testing

          Here,
Johnson argues on appeal that, although the blood stain, the armpit, and the
back of the neck of the t-shirt were subjected to DNA testing, “the remaining
areas [of the t-shirt] could yield additional profiles not related to Moosa or
[Johnson].”  Thus, he seeks DNA testing of evidence (the remaining areas of the
t-shirt) that was not previously subject to DNA testing.  See Tex. Code
Crim. Proc. Ann. art. 64.01(b)(1); Routier, 273 S.W.3d at 247–48.  

However,
Johnson does not point to any area of the t-shirt not previously subject to DNA
testing that contains biological material; he simply seeks to have the
remainder of the t-shirt tested.  Other than the blood stain, which matched
Moosa’s DNA profile, the areas of the t-shirt that were tested—the neck and the
armpits—revealed no STR DNA profiles.  Johnson has failed to provide any facts
to suggest that DNA testing of the remainder of the t-shirt would yield any
different results.  His mere assertion that DNA testing of the remaining areas “could
yield” additional DNA profiles fails to meet the threshold burden of proving
that the evidence contains biological material.  See Swearingen, 303
S.W.3d at 733 (explaining that appellant’s “proof” of biological material rests
on conclusory statements and general claims).  Consequently, we hold that the trial
court did not err by denying Johnson’s postconviction motion for DNA testing,
and we overrule his sole point.  See Tex. Code Crim. Proc. Ann. art. 64.01(a);
Swearingen, 303 S.W.3d at 733; Routier, 273 S.W.3d at 247–48.    

V.  Conclusion

          Having
overruled Johnson’s sole point, we affirm the trial court’s 
order denying DNA testing.

 

 

SUE WALKER
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; WALKER and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 11, 2011









[1]See Tex. R. App. P. 47.4.